UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA LYNCH,

        Plaintiff,

v.

WINCOR CAPITAL LLC,
VALDY WALTER LOUIS,
JOSEPH FRANKLIN MCKIBBINS,
BRANDI MARIE COULSON,
OCTAVIA YVETTE DALTON,
ARTALIA WARD LEWIS,
TINNERA L. RUMPH,
JASMINE ANGELIQUE WHITE, and
NAKEYA SHANAY WHITE,

        Defendants.

_____/

## COMPLAINT

**I.    Introduction**

    1.    This is an action for damages brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

    2.    Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country

1

who allegedly have failed to repay small, high interest rate loans.  This scheme, and similar ones operated by hundreds of entities located in and around Los Angeles, California, Jacksonville, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Fort Mill and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with litigation, derogatory credit reporting, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime.  Often times the debt is time-barred. Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect the account.  Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.      The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and

violated the FDCPA and other laws, through a loan collection scheme that is indistinguishable

from the ongoing scheme being perpetrated by the defendants as alleged in this complaint. The

United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade

Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every

state, and the Better Business Bureau all have issued press releases that warn consumers about

this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement

authorities around the country announced the first coordinated federal-state enforcement

initiative targeting deceptive and abusive debt collection practices. The "Operation Collection

Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and

local law enforcement authorities against collectors who use illegal tactics such as harassing

phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets

debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do

not actually owe. See www.ftc.gov/news-events/press-releases/2015**.**

5.      Even more recently, the federal government has begun to criminally indict

individuals involved in the type of scam that is described in this complaint. See, for example, the

forty-one count indictment filed on March 3, 2016 by the United States of America against Alan

Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No.

1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity

Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S.

District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed

November 2, 2016, in which the government alleges that the defendants cheated thousands of

consumers out of millions of dollars by running the same type of scam that is described in this complaint.

**II.     Jurisdiction**

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

**III.    Parties**

7.      Plaintiff Dana Lynch is an adult, natural person residing in Ottawa County, Michigan.  Ms. Lynch is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Lynch is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.      Defendant Wincor Capital LLC ("Wincor Capital") is an active Georgia limited liability company, formed on or about July 8, 2014. The registered agent for Wincor Capital is defendant Valdy Walter Louis, 6050 Peachtree Parkway, Suite 240-331, Norcross, Georgia 30092. According to the 2017 Annual Registration filed by Wincor Capital with the State of Georgia, the "Principal Office Address" for Wincor Capital also is located at 6050 Peachtree Parkway, Suite 240-331, Norcross, Georgia 30092. However, that address is merely a private mailbox rented by defendants from VIRSAG, L.L.C., doing business as The UPS Store No. 296. On December 10, 2015, Wincor Capital filed with the State of Georgia, an amendment to its articles of organization, stating that the sole Managing Member and sole owner of Wincor Capital is defendant Valdy Walter Louis. Wincor Capital uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Wincor Capital regularly

4

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Wincor Capital is a "debt collector" as the term is defined and used in the FDCPA. Wincor Capital is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Wincor Capital is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.      Wincor Capital and its employees and agents conduct their unlawful debt collection scam from leased office space located at 7094 Peachtree Industrial Boulevard, Suite 220, Norcross, Georgia 30071-1024.

10.      Wincor Capital and its employees and agents, in efforts to conceal their true identities and location, conduct their unlawful debt collection scam using multiple, unregistered names, including: Weststone Holdings, Weststone Holdings Group, Arbitrators Holdings, and Mediation Holdings.

11.      Wincor Capital and its employees and agents, in efforts to conceal their true identities and location, conduct their unlawful debt collection scam using multiple internet domain names. On July 16, 2014, the domain name www.WincorCapital.com was registered anonymously by defendant Valdy Walter Louis through GoDaddy.com, LLC. On April 6, 2015, the domain name www.ArbitratorsGroup.com was registered through GoDaddy.com, LLC by defendant Valdy Walter Louis, 6050 Peachtree Parkway, Suite 240-331, Norcross, Georgia 30092, contact email address wincorcap@gmail.com.

12.      Wincor Capital and its employees and agents, in efforts to conceal their true identities and location, conduct their unlawful debt collection scam using multiple internet email addresses that do not link to defendants' registered internet domain names. For example, on June 29, 2017, defendants, using the alias "Samantha Boyd," registered the email address

info.weststoneholdings@clerk.com through an entity named 1&1 Mail & Media, Inc., 701 Lee Road, Suite 300, Chesterbrook, PA 19087. Defendants at the time of that registration provided an alternative email address of wincorcap@gmail.com. Defendants have internet service through Comcast Cable Communications, Inc., in Norcross, Georgia, with an IP Address of 174.49.111.156.

13.     Wincor Capital and its employees and agents conduct their unlawful debt collection scam using multiple telephone numbers, including the following: 216-225-5788, 229-573-3742 (cellular telephone number for defendant Joseph Franklin McKibbins); 313-556-2584, 404-316-8745, 470-395-0621, 610-675-0854, 678-464-2241 (cellular telephone number for defendant Valdy Walter Louis); 678-878-6400, 866-512-8687, 877-279-9157. Wincor Capital obtains its primary telecommunications services through an entity named Dynamic Packet Corporation.

14.     Wincor Capital directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

15.     Defendant Valdy Walter Louis is a natural person, age 31, purportedly residing at 2916 Clairmont Road N.E., Apartment 2306, Brookhaven, Georgia 30329-4441, or possible 469 Blue Creek Lane, Loganville, Georgia 30052-7835. Mr. Lewis has a criminal history. Mr. Lewis is an owner, officer, member, manager, employee and agent of defendant Wincor Capital. Mr. Lewis uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Lewis regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Lewis is a "debt collector" as the term is defined and used in the FDCPA. Mr. Lewis is  a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Lewis is a "collection agency" and  "licensee" as the

terms are defined and used in the MOC.

16.     Mr. Lewis (a) created the collection policies and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Wincor Capital, (c) oversaw the application of the collection policies and procedures used by Wincor Capital and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Wincor Capital and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Wincor Capital and its employees and agents, in attempts to collect an alleged debt from Ms. Lynch as stated in this complaint.

17.     Mr. Lewis directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

18.     Defendant Joseph Franklin McKibbins, also known as Franklin Grant, is a natural person, age 43, possibly residing at 686 Elinor Place NW, Apartment A, Atlanta, Georgia 30318-5051, although it is possible that he was recently evicted. Mr. McKibbins has a cellular telephone number, 229-573-3742, that he uses at times to conduct defendants' unlawful debt collection scheme. Mr. McKibbins has a substantial criminal history. Mr. McKibbins is an employee and agent of Wincor Capital. Mr. McKibbins uses the alias "Franklin Grant" when he extorts the payment of money from consumers using the unlawful tactics that are described in this complaint. Mr. McKibbins uses interstate commerce and the mails in a business the principal

7

purpose of which is the collection of debts. Mr. McKibbins regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. McKibbins is a "debt collector" as the term is defined and used in the FDCPA. Mr. McKibbins is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. McKibbins is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

19.     Mr. McKibbins (a) created the collection policies and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, (b) participated in the daily collection operations of Wincor Capital, (c) drafted, created, approved and ratified the tactics and scripts used by Wincor Capital and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as stated in this complaint, (d) ratified the unlawful debt collection practices and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, and (e) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Wincor Capital and its employees and agents, in attempts to collect an alleged debt from Ms. Lynch as stated in this complaint.

20.     Mr. McKibbins directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

21.     Defendant Brandi Marie Coulson is a natural person, age 36, purportedly residing at 547 Rockborough Drive, Stone Mountain, Georgia 30083-3851. Ms. Coulson has a criminal history, including criminal charges related to making harassing telephone calls. Ms. Coulson is

an employee and agent of Wincor Capital. Ms. Coulson uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Coulson regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Coulson is a "debt collector" as the term is defined and used in the FDCPA. Ms. Coulson is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Coulson is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

22.     Ms. Coulson (a) created the collection policies and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, (b) participated in the daily collection operations of Wincor Capital, (c) drafted, created, approved and ratified the tactics and scripts used by Wincor Capital and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as stated in this complaint, (d) ratified the unlawful debt collection practices and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, and (e) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Wincor Capital and its employees and agents, in attempts to collect an alleged debt from Ms. Lynch as stated in this complaint.

23.     Ms. Coulson directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

24.     Defendant Octavia Yvette Dalton is a natural person, age 51, possibly residing at 2840 Normanberry Drive, Unit 111, Atlanta, Georgia 30344-3593. Ms. Dalton has a criminal

history, including criminal charges related to shoplifting. Ms. Dalton is an employee and agent of Wincor Capital. Ms. Dalton uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Dalton regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Dalton is a "debt collector" as the term is defined and used in the FDCPA. Ms. Dalton is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Dalton is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

25.     Ms. Dalton (a) created the collection policies and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, (b) participated in the daily collection operations of Wincor Capital, (c) drafted, created, approved and ratified the tactics and scripts used by Wincor Capital and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as stated in this complaint, (d) ratified the unlawful debt collection practices and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, and (e) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Wincor Capital and its employees and agents, in attempts to collect an alleged debt from Ms. Lynch as stated in this complaint.

26.     Ms. Dalton directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

27.     Defendant Artalia Ward Lewis is a natural person, age 43, purportedly residing at 4037 Northridge Way, Apartment 5, Norcross, Georgia 30093-3226. Ms. Lewis has a criminal

history, including criminal charges related to battery. Ms. Lewis is an employee and agent of Wincor Capital. Ms. Lewis uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Lewis regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Lewis is a "debt collector" as the term is defined and used in the FDCPA. Ms. Lewis is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Lewis is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

28.     Ms. Lewis (a) created the collection policies and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, (b) participated in the daily collection operations of Wincor Capital, (c) drafted, created, approved and ratified the tactics and scripts used by Wincor Capital and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as stated in this complaint, (d) ratified the unlawful debt collection practices and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, and (e) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Wincor Capital and its employees and agents, in attempts to collect an alleged debt from Ms. Lynch as stated in this complaint.

29.     Ms. Lewis directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

30.     Defendant Tinnera L. Rumph is a natural person, age 35, purportedly residing at 551 Pennybrook Lane, Stone Mountain, Georgia 30087-5900. Ms. Rumph is a convicted felon,

with criminal charges that included Forgery in First Degree. Ms. Rumph is an employee and agent of Wincor Capital. Ms. Rumph uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Rumph regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Rumph is a "debt collector" as the term is defined and used in the FDCPA. Ms. Rumph is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Rumph is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

31. Ms. Rumph (a) created the collection policies and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, (b) participated in the daily collection operations of Wincor Capital, (c) drafted, created, approved and ratified the tactics and scripts used by Wincor Capital and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as stated in this complaint, (d) ratified the unlawful debt collection practices and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, and (e) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Wincor Capital and its employees and agents, in attempts to collect an alleged debt from Ms. Lynch as stated in this complaint.

32. Ms. Rumph directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

33. Defendant Jasmine Angelique White is a natural person, age 24, purportedly residing at 146 San Michael Drive, Fort Valley, Georgia 31030-6931. Ms. White is an employee

and agent of Wincor Capital. Ms. White uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. White regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. White is a "debt collector" as the term is defined and used in the FDCPA. Ms. White is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. White is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

34.     Jasmine Angelique White (a) created the collection policies and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, (b) participated in the daily collection operations of Wincor Capital, (c) drafted, created, approved and ratified the tactics and scripts used by Wincor Capital and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as stated in this complaint, (d) ratified the unlawful debt collection practices and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, and (e) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Wincor Capital and its employees and agents, in attempts to collect an alleged debt from Ms. Lynch as stated in this complaint.

35.     Jasmine Angelique White directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

36.     Defendant Nakeya Shanay White is a natural person, age 42, purportedly residing at 5301 Fairington Club Drive, Lithonia, Georgia 30038-5667. Ms. White is a convicted felon,

with criminal charges involving drugs and possession of firearms. Ms. White is an employee and agent of Wincor Capital. Ms. White uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. White regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. White is a "debt collector" as the term is defined and used in the FDCPA. Ms. White is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. White is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

37.     Nakeya Shanay White (a) created the collection policies and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, (b) participated in the daily collection operations of Wincor Capital, (c) drafted, created, approved and ratified the tactics and scripts used by Wincor Capital and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as stated in this complaint, (d) ratified the unlawful debt collection practices and procedures used by Wincor Capital and its employees and agents, in connection with their common efforts to collect consumer debts, and (e) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Wincor Capital and its employees and agents, in attempts to collect an alleged debt from Ms. Lynch as stated in this complaint.

38.     Nakeya Shanay White directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

39.     All defendants, along with other companies, employees and agents to be identified

in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

40.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

41.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

42.    In or about August 2008, plaintiff Dana Lynch allegedly borrowed approximately $450.00 via the internet from an entity named Global Group Holdings, LLC ("Global"). Any money obtained by Ms. Lynch was borrowed and used by Ms. Lynch for personal, family and household purposes.

43.    Ms. Lynch borrowed the money in what is commonly called a "payday loan," for a term of approximately two weeks, and at an annual interest rate that exceeded 350 percent.

44.    In Michigan, payday loans are regulated by the Deferred Presentment Service Transactions Act, MCL 487.2122 *et seq.*

45.    Ms. Lynch allegedly failed to repay the debt when due, and the account allegedly went into default in or before October 2008.

46.    It has been more than six years since the account allegedly went into default and the debt is no longer judicially enforceable by operation of the applicable Michigan statute of limitations. Stated differently, the debt is time-barred.

47.    Moreover, Ms. Lynch states that the debt was paid or settled years ago. Ms. Lynch denies owing any money to any entity in connection with the alleged debt. Ms. Lynch refuses to pay any money to any entity in connection with the alleged debt, .

48.    Despite the foregoing, the defendants named in this lawsuit stole Ms. Lynch's account information and personal financial information, or acquired Ms. Lynch's stolen account

information and personal financial information, and then used that information to extort the payment of money from Ms. Lynch on an alleged debt that Ms. Lynch does not owe and in connection with an account that defendants have no right to collect.

49.    On or about October 4, 2017, defendants' employee and agent (known as a "point caller") placed a call to Ms. Lynch's cellular telephone and left the following scripted message on Ms. Lynch's voice mail: "Hello. This message is for Dana Lynch, social ending in xxxx, Case Number 80042. My name is Terry Kennedy, Private Courier in connection with Ottawa County giving you a call regarding some documents that requires your signature immediately. You will need to be available tomorrow afternoon between the hours of 12:00 and 5:00 p.m. Assuming that you will be at work around this time, I will be stopping there first. You need to be available with two valid forms of ID and a witness. Understand that if I do serve you at your job, you need your supervisor, manager, or someone in the HR Department to sign off as a witness for you. But, if I do not get you at your job, I will be stopping by your home, and I will still need those two forms of ID and a witness. If you have any further questions or if you'd like to place a stop order on this service, you will need to contact your filing party immediately at 313-556-2584. Again, the number is 313-556-2584. Case Number 80042. Dana Lynch, you have been notified."

50.    On October 5, 2017, Ms. Lynch placed a return call to defendants at 313-556-2584. The call was answered by the following automated, pre-recorded greeting: "Good afternoon, you have reached the voice mailbox of Weststone Holdings Group. If this call is from an attorney or the listed subject regarding a summons you have received, please call us back during our normal business hours with your citation number, and someone from our Legal Department will be available to assist you. Normal business hours are Monday through Friday

from 9:00 a.m. to 5:00 p.m., Eastern Standard Time. For all other inquiries, please leave a

message including your first and last name, and the best number to contact you, and someone

from the office will reach out to you within twenty-four hours. Thank you in advance and have a

good day."

51.    On October 5, 2017, Ms. Lynch placed a second call to defendants at 313-556-

2584. The call was answered by defendants' employee and agent, defendant Joseph Franklin

McKibbins, who stated "Good morning. This is Franklin Grant with Weststone Holdings

Group." In the ensuing conversation, Mr. McKibbins made the following statements to Ms.

Lynch:

a)    "Now Dana, you were contacted by Private County Courier Service which

actually is scheduled to serve you with a notice to appear, it looks like

Ottawa County Small Claims Court within the next 48 hours. This is

coming from the filing party of Global Group Holdings, and they're

requesting your appearance to answer to some allegations for theft by

taking, theft by deception, breach of contract, and malicious intent to

defraud a financial institution. They're stating that you applied for and

received a cash advance loan with them, using valid bank information with

West Suburban Bank as collateral. What that means ma'am is that you set

up payments to come out of your checking account to pay back for the

borrowed funds and for whatever reason on October 10th, 2008, those

transactions bounced back on either being insufficient funds or the

checking account was closed. Now ma'am, under the United States

18

Banking Law, Title 18, Section 1344 states that any high-interest loan that is secured with banking information and the account is closed by the consumer or the financial institution itself, that constitutes a potential fraud charge. However, if you are found liable inside Ottawa County, this plaintiff will have the right to motion for a judgment against you, in order to place liens on any property or asset that you may currently own. The worst case scenario ma'am, they'll be requesting garnishment of wages and under federal law that is up to 25% of your income, and request that your driver's license number [actual number redacted] is revoked. At this point Global Group Holdings is giving you the option to resolve this matter on a voluntary basis or to retain legal representation to pursue this through Ottawa County. Now Dana, was it your specific intent to defraud this lender of funds?"

b)   "The payday loan was taken out in August of 2008. Breach of contract date October 2008."

c)   "The actual amount that was borrowed was $450.00."

d)   "Right now they are pursuing you inside of court for $978.45."

e)   "You borrowed it from Global Group Holdings which is an online payday loan lending institution. We do not work directly with them. It has been forwarded to our office. Actually, it has been forwarded out to the County for legal action, and what you're trying to do, or what the call was about, is so if you want to take advantage of trying to resolve this through a stop-

action, then we'll be able to help you with that. Global Group Holdings

sent it to [us], and [we] sent it to the County."

  f)  "I'm Franklin Grant, and I work for the mediation firm Weststone

Holdings Group. And basically what we do here ma'am is we process and

facilitate civil complaints prior to them moving forward for legal action."

  52.  In response to the above-quoted statements made by defendants' employees and

agents, Ms. Lynch agreed to pay money to defendants by debit card, for the sole purpose of

identifying and locating the anonymous entities who had obtained Ms. Lynch's stolen personal

and financial information and had used that information to communicate with Ms. Lynch in

efforts to extort the payment of money from Ms. Lynch with false threats of criminal prosecution

and litigation. In order to effect the payment, Mr. McKibbins transferred Ms. Lynch to

defendants' employee and agent who identified herself as "Jacquelyn with payment processing."

In the ensuing conversation, defendants' employee and agent made the following statement to

Ms. Lynch:

  a)  "Alright so let me go ahead for us and make sure all of this is entered into

the system correctly. I also do want to make sure that you receive your

FDCPA legal liability release documentation once your final payment does

clear."

Ms. Lynch provided defendants' employee and agent with her debit card information and her

email address. Defendants' employee then stated:

  b)  "I'm going to place you on a brief hold Mrs. Lynch and I'll be right back

with a court release number for your records. After that of course, you

20

would receive that email about 15-20 minutes after our conversation here,

okay?"

While Ms. Lynch waited on hold, defendants debited Ms. Lynch's payment of $100.00.

According to JPMorgan Chase Bank, N.A., the entity who debited the payment was "Arbitrators

Holdings" in Atlanta, Georgia, with a (not in service) telephone number of 866-512-8687.

53.     On October 5, 2017, Ms. Lynch received an email from defendants. The email

was address used by defendants to send the email was info.weststoneholdings@clerk.com.

Attached to the email was a letter dated October 5, 2017 on the letterhead of "Weststone

Holdings Group" with a non-existent mailing address in Inverness, Florida. The letter stated that

because Ms. Lynch had paid money to defendants, "we have notified the client to suspend the

complaint against you." The letter failed to identify defendants' "client." The letter provided a

contact telephone number of 877-279-9157. A copy of the email and letter are attached to this

complaint as Exhibit A.

54.     The above-described threats and representations made by defendants and

defendants' employees and agents were false and part of a scripted and unlawful debt collection

practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of

money from thousands of consumers across the country through the use of false threats,

extortion, intimidation, and unlawful harassment, often times on debts that are not owed and

through the use of unlawfully obtained account and personal information.

55.     Defendants and their employees and agents failed to meaningfully identify

themselves and their companies.

56.     Defendants and their employees and agents failed to identify the current owner of

21

the alleged debt.

57.    Defendants and their employees and agents falsely represented and falsely implied that there were legal claims pending against Ms. Lynch.

58.    Defendants and their employees and agents falsely represented and falsely implied that criminal charges were pending against Ms. Lynch.

59.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit had been filed or would be filed against Ms. Lynch to collect the alleged debt.

60.    Defendants and their employees and agents falsely represented that the name of their company was "Weststone Holdings Group."

61.    Defendants and their employees and agents falsely represented and falsely implied that defendants were going to serve Ms. Lynch with documents at her place of employment.

62.    Defendants and their employees and agents wrongfully and falsely represented and implied that Ms. Lynch was under some obligation to provide defendants with "two valid forms of [identification]."

63.    Defendants and their employees and agents wrongfully and falsely represented and implied that defendants were going to come to Ms. Lynch's place of employment and Ms. Lynch was under some obligation to have her "supervisor, manager, or someone in the HR Department to sign off as a witness" for Ms. Lynch.

64.    Defendants and their employees and agents falsely represented and falsely implied that defendants were going to serve Ms. Lynch with documents the next day.

65.    Defendants and their employees and agents falsely represented and falsely implied that Ms. Lynch had been "contacted by Private County Courier Service which actually is

22

scheduled to serve you with a notice to appear, it looks like Ottawa County Small Claims Court

within the next 48 hours."

66.     Defendants and their employees and agents falsely represented and falsely implied

that Ms. Lynch had been sued by "Global Group Holdings, and they're requesting your

appearance to answer to some allegations for theft by taking, theft by deception, breach of

contract, and malicious intent to defraud a financial institution."

67.     Defendants and their employees and agents falsely represented and falsely implied

that the alleged failure of Ms. Lynch to repay the alleged payday loan was a violation of "the

United States Banking Law, Title 18, Section 1344 [which]states that any high-interest loan that

is secured with banking information and the account is closed by the consumer or the financial

institution itself, that constitutes a potential fraud charge."

68.     Defendants and their employees and agents falsely represented and falsely implied

to Ms. Lynch that "if you are found liable inside Ottawa County, this plaintiff will have the right

to motion for a judgment against you, in order to place liens on any property or asset that you

may currently own."

69.     Defendants and their employees and agents falsely represented and falsely implied

that if Ms. Lynch did not pay money to defendants, "they'll be requesting garnishment of wages

and under federal law that is up to 25% of your income."

70.     Defendants and their employees and agents falsely represented and falsely implied

that if Ms. Lynch did not pay money to defendants, Ms. Lynch's driver's license could be

"revoked."

71.     Defendants and their employees and agents falsely represented and falsely implied

that "right now they are pursuing you inside of court for $978.45."

72.     Defendants and their employees and agents falsely represented and falsely implied that a claim against Ms. Lynch had "been forwarded out to the County for legal action" by defendants, and that defendants had contacted Ms. Lynch "trying to resolve this through a stop-action."

73.     Defendants' employee and agent, defendant Mr. McKibbins, falsely stated to Ms. Lynch, "I'm Franklin Grant, and I work for the mediation firm Weststone Holdings Group. And basically what we do here ma'am is we process and facilitate civil complaints prior to them moving forward for legal action."

74.     Defendants and their employees and agents falsely represented the amount of the alleged debt.

75.     Defendants and their employees and agents falsely represented that lawyers were involved in the efforts to collect money from Ms. Lynch.

76.     Defendants and their employees and agents falsely represented and falsely implied that defendants have a "Legal Department."

77.     Defendants and their employees and agents falsely represented and falsely implied that defendants sometimes serve summonses to appear in court on consumers.

78.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Lynch had committed a crime.

79.     Defendants and their employees and agents falsely represented and falsely implied that they had the right to collect the alleged debt, when in fact defendants had stolen the account and Ms. Lynch's personal financial information, or had otherwise acquired the stolen account

and Ms. Lynch's stolen personal financial information.

80.     Defendants did not intend to file a lawsuit against Ms. Lynch in any Michigan court in efforts to collect the alleged debt.

81.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

82.     Defendants and their employees and agents falsely and wrongfully represented and falsely and wrongfully implied that Ms. Lynch would be sued to collect a time-barred debt.

83.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

84.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

85.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

86.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

87.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

88.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector

for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

89.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

90.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

91.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

92.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

93.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

94.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

95.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. §

1692e(8).

96.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

97.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

98.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

99.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

100.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

101.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

102.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

103.     Defendants and their employees and agents falsely accused Ms. Lynch of committing a crime.  Ms. Lynch did not commit a crime under Michigan law because the

Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

104.    Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

105.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

106.    Defendants and their employees and agents failed to timely send to Ms. Lynch a notice containing the information required by 15 U.S.C. § 1692g(a).

107.    Each defendant and each defendant's employees, managers, members, officers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

108.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

109.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

110.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

111.    In connection with efforts to collect an alleged debt from Ms. Lynch, defendants obtained personal information regarding Ms. Lynch from a subscription-based internet database (www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management, Inc.

112.    Alternatively, in connection with efforts to collect an alleged debt from Ms. Lynch, defendants obtained personal information regarding Ms. Lynch from a subscription-based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

113.    The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA

for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

114.    The TLO database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to TLO, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

115.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

116.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

117.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

118.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

119.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

120.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Ms. Lynch.

121.    Defendants used Accurint or TLO to obtain, disclose and use personal information regarding Ms. Lynch.

122.    Defendants made a false representation to Accurint or TLO to obtain personal information regarding Ms. Lynch that was derived from Ms. Lynch's motor vehicle record.

123.    Alternatively, the entity that obtained Ms. Lynch's personal information from Accurint or TLO and disclosed the personal information to defendants, made a false representation to Accurint or TLO to obtain personal information regarding Ms. Lynch that was derived from Ms. Lynch's motor vehicle record.

124.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

125.    Defendants knowingly obtained, disclosed and used Ms. Lynch's personal information, from a motor vehicle record, for the purpose of engaging in their scam to extort the payment of money from Ms. Lynch through numerous false threats, including false threats of litigation and false threats of criminal prosecution.

126.    Defendants knowingly obtained, disclosed and used Ms. Lynch's personal

31

information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with

willful or reckless disregard for the law.

127.    No defendant had a "permissible use" as the phrase is defined in the DPPA to

obtain, use or disclose Ms. Lynch's personal information obtained from Accurint or TLO.

128.    No defendant had Ms. Lynch's consent, permission, authorization or waiver to

obtain Ms. Lynch's personal information from Accurint or TLO.

129.    A civil action under the DPPA may be commenced within four years after the

cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d

1065, 1079 (D.Minn. 2014).

130.    The DPPA imposes vicarious liability on principals for the acts of the actions of

their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y.

2003).

131.    Defendants, and their employees and agents, each have intentionally and wilfully

violated the DPPA.

132.    Each defendant knew, or should have known, of the unlawful debt collection

practices being used by the other defendants to collect alleged debts.

133.    Each defendant shared Ms. Lynch's personal and private financial information

among the other defendants, knowing that the other defendants would engage in the unlawful

debt collection practices that are described in this complaint.

134.    Each defendant owed a duty of care to Ms. Lynch, not to obtain and not to share

Ms. Lynch's personal and private financial information with entities that each defendant knew or

should have known had no right to possess the information and that each defendant knew or

should have known would use that information to attempt to unlawfully coerce the payment of

money from Ms. Lynch. Each defendant breached the duty of care owed to Ms. Lynch.

135.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

136.    Plaintiff incorporates the foregoing paragraphs by reference.

137.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)       Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)       Such further relief as the court deems just and proper.

## Count 2 – Drivers Privacy Protection Act

138.   Plaintiff incorporates the foregoing paragraphs by reference.

139.   Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)       Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)       Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)       Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)       An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)       An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)       An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

## Count 3 – Michigan Regulation of Collection Practices Act

140.   Plaintiff incorporates the foregoing paragraphs by reference.

141.   Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)       Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

34

b)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

d)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

142.    Plaintiff incorporates the foregoing paragraphs by reference.

143.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

35

a)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

d)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

f)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

g)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: December 1, 2017

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com